ISAAC D. FARNSWORTH *vs.* BENJAMIN G. BOARDMAN & others.

Suffolk. March 13, 1878. — April 11, 1881. COLT, SOULE & FIELD, JJ., absent.

Parol evidence is admissible to show the real consideration of a contract.

A contract is to be construed in the light of surrounding circumstances, and in view of the subject matter of the agreement, the acts of the parties and their relations to each other.

A special partner in a firm, who is a party to a transfer of all the assets of his firm to one creditor for the benefit of the creditors of the firm, becomes liable to such creditors as a general partner, under the Gen. Sts. c. 55, § 7.

H. agreed in writing with the plaintiff to "assume and pay" all the debts, notes and accounts due from a firm, of which the plaintiff was a member, and to "indemnify and save harmless" the plaintiff and the firm against any claims, suits, costs and damages, by reason of the debts, notes and accounts set forth. *Held*, that these were independent stipulations, and that the agreement to pay was not merged in the agreement to indemnify; and that the plaintiff could maintain an action against a guarantor of the agreement before he had paid any of the debts.

In an action on an agreement made by H. with the plaintiff, by which H. agreed "to assume and pay all the debts, notes and accounts due from" a firm, of which the plaintiff was a member, "or which may have been incurred for their benefit," and schedules of which were annexed, it appeared that one of the notes named in the schedule was made by a third person payable to H. and indorsed by him; that he gave it to the firm without consideration; and it was sold by the firm, without becoming liable upon it, and the proceeds received by the firm. It further appeared that the maker of the note had signed notes to a

large amount for the accommodation of H., which fell due at the same time as the note in question. *Held,* that these facts would warrant a finding that the note was included in the contract, and that a guarantor of the contract was liable to the plaintiff for the amount of it, although the plaintiff had not paid it.

ENDICOTT, J.   This action is brought against the defendants as guarantors for " the faithful performance " of a written contract, made by Charles S. Holmes with the plaintiff, dated November 5, 1872.   This contract was actually made November 25, but was dated back to November 5 for reasons which will hereafter appear.   The material portions of the contract are, that Holmes, in consideration of one dollar paid by the plaintiff and other good and sufficient considerations, agrees " to assume and pay all the debts, notes and accounts due from the late firm of Thayer and Brother, or which may have been incurred for their benefit," which are enumerated in the schedules annexed to the contract; and if any items for labor, materials or supplies for the factories of Thayer and Brother are omitted from the schedules, " that they shall be assumed and paid by Holmes, to an amount not exceeding $300;" "and he further agrees to indemnify and save harmless said Farnsworth and said Thayer and Brother against any claims, suits, costs and damages, by reason of the debts, notes or accounts herein set forth."   The guaranty is signed B. G. Boardman & Co., without further description.   This agreement, with the schedules attached to it, is annexed to the declaration, which sets forth in detail the notes and accounts, which Holmes has failed and refused to pay, and for which it is contended the defendants are liable under their written guaranty.   The case was referred to an auditor, whose report is made part of the record.

This contract states that it was made in consideration of one dollar paid by Farnsworth, and divers other good and sufficient considerations.   What the real consideration was is open to inquiry, and the contract is to be construed in the light of surrounding circumstances, and in view of the subject matter of the agreement, the acts of the parties and their relations to each other.   The report of the auditor recites at great length the transactions of the several parties, and their agreements with and their relations to each other, which resulted in the execution

of the contract. The material facts found and reported may be briefly stated.

The firm of Thayer and Brother failed May 2, 1872. At that time their debts amounted to about $120,000, and their assets to about $85,000. They were dealers in boots, shoes and leather in Boston, and had three factories in other places for the manufacture of boots and shoes. Edmund F. Thayer and Theodore A. Thayer were general partners in the firm, and the plaintiff was a special partner. He alleges in his declaration that he was a special partner, but that it was contended by the creditors of Thayer and Brother that he was liable as a general partner. For several years before the failure, the firm had extensive dealings with Holmes, who was engaged in the same business, and, at the time of the failure, it was indebted to him to an amount exceeding $50,000. Holmes failed soon after the failure of Thayer and Brother.

Before the failure of Thayer and Brother, Holmes had made an agreement, April 6, 1872, with the plaintiff, by which it appears that the plaintiff had advanced to the firm $10,000, in addition to the sum of $25,000 put in by him as special partner, and was willing to make further advances; that Holmes pro posed to have an interest in the affairs of the firm, and to furnish money and merchandise to carry it on; and undertook and agreed to indemnify the plaintiff for all pecuniary claims and liabilities then incurred or after to be incurred by him by reason of his connection with Thayer and Brother; but the plaintiff was not to withdraw the capital contributed by him as special partner for two years. This agreement was to continue in force for one year; and was annulled and given up on November 25, 1872, which is an important date in the history of these trans actions.

These were the relations existing between Thayer and Brother, Farnsworth and Holmes when the firm failed on May 2, 1872. On May 22, 1872, which was the day on which Holmes failed, a petition in bankruptcy was filed in the District Court of the United States for the District of Massachusetts, by one of the creditors of the firm, against all the partners, including the plaintiff, praying to have them adjudged bankrupts. To this petition the plaintiff filed an answer denying that he was a

general partner. A hearing was had on June 21, and the court ordered that all the partners, including the plaintiff, be adjudged bankrupts. Within ten days, the plaintiff filed a notice of his intention to apply to the Circuit Court for a revision of the order, but he never took any further action thereon. No appeal lies under the U. S. Rev. Sts. § 4980, from a decision in the District Court, in case of involuntary bankruptcy, declaring the debtor to be a bankrupt. *In re O'Brien*, 1 Bankr. Reg. 176. Bump on Bankr. (7th ed.) 269, 321–324, 327. The notice of the plaintiff, that he intended to apply for a revision of the order was therefore a notice that he intended to file a bill in equity, under the first clause of § 4980. The provisions of § 4983 do not apply to such an appeal by bill in equity, and such a notice as that given by the plaintiff does not necessarily suspend the proceedings in bankruptcy in the District Court. On November 9, Judge Lowell filed a statement of conclusions of law and fact found by him; and on November 25, after the contract of guaranty was executed, the proceedings were dismissed according to an agreement filed.

On May 23, the day after his failure, Holmes, who was largely indebted to the defendants Benjamin G. Boardman and Thomas O. Richardson, who constituted the firm of B. G. Boardman & Company, made an assignment to them, in trust for the benefit of his creditors, and the same was afterwards, and before November 5, 1872, executed by all the creditors of Holmes.

Thereupon, soon after November 5, a settlement of the indebtedness of Thayer and Brother to Holmes, of certain claims of the plaintiff against Holmes, and of the claims of one Jackson to a portion of Thayer and Brother's assets, was agreed upon between the plaintiff and the defendants B. G. Boardman and Thomas O. Richardson, as trustees of Holmes for the benefit of his creditors. As part of the settlement, the plaintiff gave up the agreement of April 6, before referred to, and surrendered notes and checks signed by Holmes to the amount of $25,000, and executed an agreement to pay a note of Holmes held by a third party, and to cancel notes of Holmes held by him to a considerable amount, and also paid to Holmes $37,000 in cash. At the same time, and as part of this transaction, Thayer and Brother, with the assent of Jackson, delivered a formal assignment

of all their assets to Holmes. These assets and the cash paid by Farnsworth passed at once into the hands of the defendants as trustees; and the agreement upon which this action is brought was then executed by Holmes, and its faithful performance by Holmes was guaranteed by the defendants as a firm, and not as trustees for Holmes. This agreement with the accompanying guaranty, and the other papers necessary to complete the above settlement, were executed November 25, but were dated as of November 5, the day when Holmes's assignment to the defend ants was finally assented to by all his creditors. At the same time, by consent of the parties, the proceedings in bankruptcy against the firm were dismissed, wherein the plaintiff had been adjudged a general partner. That the record of these proceed ings was competent, as showing the condition of things, and the relations of Farnsworth to the firm and to Holmes and the de fendants, when this final settlement was made, we can have no question. Whether it was competent to show that Farnsworth was a general partner we need not consider.

It appears that, under the settlement thus consummated on November 25, 1872, Farnsworth paid to Holmes $37,000 in money, and caused all the assets of the firm of Thayer and Brother to be transferred to him, its principal creditor, for the purpose of paying not only the debts due from the firm to him, but also the other debts of the firm, all of which were specified. Farnsworth had an interest in the business and assets of the firm, for he was a special partner therein, and as such was re sponsible, the firm being insolvent, for all sums received by him from the firm with interest thereon. Gen. Sts. *c.* 55, § 8. See *Snyder* v. *Leland*, 127 Mass. 291. And he at that time stood charged as a general partner in the bankruptcy court of the United States. It is clear that the principal object of Farns worth in making this settlement was to relieve himself and the firm from all liability to Holmes and the other creditors; and, to enable Holmes the more effectually to pay these debts, Farnsworth released him from a number of claims he held against him, and agreed to protect him from all liability upon certain other claims. It is equally clear that the object of Holmes, and the defendants who acted for him, was to procure the assets of the firm, and the $37,000 from Farnsworth, in

order to secure Holmes's claim against the firm, and to pay his own creditors; and to accomplish this they were willing to assume and pay all the debts due to other creditors of the firm, and all debts which had been incurred for the benefit of the firm; and at the same time to discharge the proceedings in bankruptcy against the firm and Farnsworth. Holmes therefore signed the written contract with Farnsworth, the material portions of which have been recited; and the defendants, who were parties to the settlement as trustees, guaranteed its faithful per formance by Holmes, not as trustees, but in their individual capacities, and all the assets of the firm and the money paid by Farnsworth passed into their hands. It is evident that this guaranty was part of the settlement thus made.

It cannot be doubted that Farnsworth, who, being a special partner, caused, or was a party to, the transfer of all the assets of the insolvent firm to one creditor, and made a contract with him in regard to their disposal, and in regard to the payment of the partnership debts, became liable to all the other creditors as a general partner. The statute expressly provides that, if a special partner " makes any contract respecting the concerns of the partnership with any person except the general partners, he shall be deemed and treated as a general partner in relation to such contract, unless he makes it appear that in making such contract he acted as special partner only." Gen. Sts. c. 55, § 7. This partnership was formed and all these transactions took place before the enactment of the St. of 1873, c. 320, which repeals the provisions of the Gen. Sts. c. 55, § 7, but contains the provision that § 7 shall continue to apply to all partnerships formed before the passage of the act. That Farnsworth did not act as special partner only in this transaction sufficiently appears; he certainly did not pay the $37,000 in that capacity. He was liable therefore to pay the debts which he seeks to recover in this action; and for the payment of which the assets of the firm and his own money had been delivered to Holmes, and through him to the defendants.

The defendants contend that the contract is an agreement to indemnify, and not an absolute agreement to pay; and that, as the plaintiff has not paid the amounts he seeks to recover, he cannot maintain this action. It is to be observed that this liability

of Holmes does not arise upon an implied contract, as where a grantee accepts a deed, containing a provision that he shall pay a note of the grantor secured by a mortgage on the premises, in which case a promise to pay is implied from the acceptance of the deed. *Pike* v. *Brown*, 7 Cush. 133. *Furnas* v. *Durgin*, 119 Mass. 500. *Locke* v. *Homer*, *ante*, 93. But his liability arises upon an express contract in writing signed by him, under which he received, at the hands of Farnsworth and through his instru mentality, money and assets to meet the liability he assumed. This contract contains an express agreement to assume and to pay these debts, and a further agreement to indemnify and save harmless both the firm and Farnsworth, not merely against these debts, but against all claims, suits, costs, and damages by reason of these debts. These are independent stipulations, and the agreement to pay is not merged in the agreement to indemnify. Indeed, the agreement to indemnify enlarges the liability of Holmes, and includes not only all costs and damages which may be incurred by Farnsworth by reason of these debts, but also those incurred by Thayer and Brother, who are not included in the agreement to pay. In such case, the party with whom and for whose security the agreement to pay is made is injured by the failure of the other party to perform, and he is not obliged to delay his action until he has paid the debts which the other has agreed to assume and pay.

In the case of *In re Negus*, 7 Wend. 499, a bond was given as a bond of indemnity, but contained a covenant that the obligor should pay certain debts for which the obligee was liable, and, upon the failure of the obligor to perform this covenant, it was held that the obligee could maintain an action thereon, although it did not appear that he had paid the debts. It was said by Chief Justice Savage, " whether an action lies or not, depends upon the true intent and meaning of the covenant; if it is simply to indemnify, and nothing more, then damage must be shown, before the plaintiff can recover; but if there is an affirmative covenant to do a certain act, or pay certain sums of money, then it is no defence in such an action to say the plaintiff has not been damnified. In such case it is the duty of the defendant to perform his own contract." And again he says, " If a bond, in which the obligor covenants affirmatively to pay

certain sums, conclude with a covenant to indemnify and save harmless the obligee, it does not therefore become a mere covenant of indemnity, unless such appears from the whole instrument to have been its only object." See also *Chace* v. *Hinman*, 8 Wend. 452.

The case of *Thomas* v. *Allen*, 1 Hill (N. Y.) 145, nearly resembles the case at bar. The condition of the bond was to pay a sum of money for the plaintiff on a bond executed between third persons, and also to save the plaintiff harmless therefrom, and from all costs and charges that might be occasioned by delay or nonpayment of the same; and it was decided that this was more than a bond of indemnity, and imposed upon the defendant a positive obligation to pay. It was therefore sufficient to allege that the sum became due and was not paid, although the allegation did not show that the plaintiff had been actually damnified. Similar decisions were rendered in *Churchill* v. *Hunt*, 3 Denio, 321, and *Pierce* v. *Plumb*, 74 Ill. 326. See also *Gilbert* v. *Winans*, 1 Comst. 550. So in *Penny* v. *Foy*, 8 B. & C. 11, a defendant pleaded, by way of set-off to the plaintiff's demand, a bond conditioned for the payment of an annuity to a third person, as well as for indemnifying the defendant from the same; it was held that it was not a bond of indemnity only, and that the defendant was not bound to prove that he had paid the money in order to set it off. See also *Holmes* v. *Rhodes*, 1 B. & P. 638; *Cutler* v. *Southern*, 1 Saund. 116, and note; *Toussaint* v. *Martinnant*, 2 T. R. 100; *Martin* v. *Court*, 2 T. R. 640; *Hodgson* v. *Bell*, 7 T. R. 97; *Loosemore* v. *Radford*, 9 M. & W. 657; *Rawson* v. *Copland*, 2 Sandf. Ch. 251; *Crofoot* v. *Moore*, 4 Vt. 204; *Redfield* v. *Haight*, 27 Conn. 31; *Jones* v. *Thomas*, 21 Grat. 96. Where there is an express promise to assume and pay a debt, founded upon a sufficient consideration, an action lies on the promise to pay, and not by reason of the fact that the plaintiff has been obliged to pay it himself. Upon breach of such a contract, the measure of damages is the amount of the debt to be paid. *Wicker* v. *Hoppock*, 6 Wall. 94. *Churchill* v. *Hunt*, 3 Denio, 321. *Pierce* v. *Plumb*, 74 Ill. 326.

The auditor has found the amounts for which the defendants are liable on each of the notes and accounts due from the firm of Thayer and Brother, or incurred for their benefit, which the

plaintiff sets out in his declaration and seeks to recover in this action.  But the defendants contend that the plaintiff cannot recover the money due upon two of the notes, as found by the auditor.  These notes are dated December 20, 1871, and January 10, 1872, respectively, are both signed by Andrew Hawver, and are payable to and indorsed by Holmes.  The first is also indorsed by Thayer and Brother.  It is contended that, as Thayer and Brother were never notified of the dishonor of the first note, they were released from all liability on it; and, as to the second note, that Thayer and Brother were never liable on it at all.  But these notes are both named in the schedules attached to Holmes's contract; and the auditor has found that they were given by Holmes, without consideration, to Thayer and Brother, and were sold by them to Irenus Gooding, and they received and used the proceeds.  The notes were both due in June 1872.  What the consideration for them was as between Hawver and Holmes did not appear, but it did appear that Hawver signed notes to a large amount for the accommodation of Holmes, which fell due in June 1872.  He might therefore well find that they were debts in the hands of Gooding, incurred for the benefit of Thayer and Brother, and that, being included in the schedules, they formed a part of the debts which Holmes had agreed to assume and pay.  And, upon these facts, it may well be contended that, although no action could be brought on the notes against Thayer and Brother, yet as Hawver was liable upon them, he would, if compelled to pay, have a claim against Holmes for whose accommodation they were given; and Holmes in turn could look to Thayer and Brother, who took them from him without consideration, and appropriated to their own use the money received from their sale to Gooding.

*Judgment for the plaintiff.*

*H. W. Paine & E. Avery*, for the defendants.

*R. M. Morse, Jr.*, for the plaintiff.